## THE PEOPLE *v.* F. MIER, J. T. MIER, AND JOHN STUBER.

SUIT FOR TAXES—JURISDICTION OF.—An action brought under the Revenue Act of 1861, to recover judgment for unpaid taxes, is not a case in equity, but an action at law; and where the amount is less than three hundred dollars the District Court has no jurisdiction.

TAX SUIT—IN EQUITY.—If, however, the action is brought under the provisions of the Act of May 12th, 1862, it is a case in equity, and the District Court has jurisdiction, although the amount claimed is less than three hundred dollars.

SUITS FOR TAXES—ACTS OF 1861 AND 1862.—The Acts of 1861 and 1862 prescribe the same form of complaint, but the Act of 1861 contemplates a mere money judgment, while the Act of 1862 authorizes a judgment foreclosing a lien for taxes, with an order of sale, etc., so that the character of the action, whether it is a case in equity or at law, will be determined by the prayer of the complaint. If the prayer of the complaint is for a money judgment, the District Court will not have jurisdiction where the amount claimed is less than three hundred dollars; but if the prayer is for the foreclosure of a lien, order of sale, etc., the District Court has jurisdiction, regardless of the amount claimed.

TAXES—JURISDICTION OF JUSTICES OF THE PEACE.—If, in an action to recover a money judgment for unpaid taxes, commenced in a Justice's Court, an answer is filed which puts in issue the legality of a tax, the Justice of the Peace is ousted of his jurisdiction.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

This action was commenced on the 8th day of January, 1864. The following is a copy of the prayer of the complaint:

"Wherefore said plaintiffs pray judgment against the said persons defendants herein, for the sum of $65 60, and for damages and costs, and separate judgment against the said real estate and improvements for $65 60, and the damages and costs aforesaid, and that the said lien be enforced, and that the said real estate and improvements be sold to satisfy such separate judgment, and that the interest and claim of each person aforesaid, defendant herein, and all persons claiming any interest in said real estate or improvements, be forever barred and foreclosed."

The other facts are stated in the opinion of the Court.

*Robert Robertson* for Appellant.

No brief on file.

*W. W. Upton*, District Attorney, for Respondent.

This is an action to foreclose a lien for taxes levied on the real estate described in the complaint in the year 1862, for State and county purposes, under the General Revenue Law. (Statutes 1861, page 419.)

The statute last cited makes the tax a lien upon the property assessed, (§3,) and directs that an action be commenced to foreclose the lien, giving the form of the complaint, and providing for a decree and sale of the premises (§§3, 39, 40.) The proceeding is by complaint and summons, and the proceedings in the action are governed by the Civil Practice Act, except as to the form of the complaint, and some statutory provisions as to the manner of the sale and the effect of the deed (§45.)

The Legislature of 1862 provided that a summons containing a description of the premises might be issued and be served by publication. Under the late organization of Courts in this State, actions were brought in Justice's Courts and in the District Court to enforce liens of this character, and the late Supreme Court invariably sustained the jurisdiction of each of these Courts, it then not being a material question whether they were law or equity cases. (*People* v. *Pica*, 19 Cal. 595; *Mills* v. *Tukey*, 22 Cal. 373; *People* v. *Rains*, 23 Cal. 128; *People* v. *Todd*, 23 Cal. 181; *People* v. *Leet*, 23 Cal. 161; *Moss* v. *Mayo*, 23 Cal. 481.) Under the present judiciary system it becomes material whether they are equity cases.

It seems that, except for the purposes of discovery and an account, the ground of equity jurisdiction depends upon the final relief sought. In cases of accident, mistake, and trust,

the real ground of the interposition of a Court of equity is that of the inability of a Court of law to furnish an adequate remedy.

"A foreclosure is not within the province of remedies at law," (6 John Ch. R. 248; *Dimkley* v. *Van Buren*, 3 ib. 330,) and for this reason, Judge Story, in speaking of mortgage, says: "From its very nature, the jurisdiction over it belongs peculiarly and exclusively to Courts of equity." (Story's Eq. Jur. 485.) The rights and duties of the parties plaintiff and defendant in this case differ from that of mortgagor and mortgagee, vendor and vendee, only in the manner of the creation of the right sought to be enforced.

When an equitable right exists, the power of the Court to afford a remedy does not depend upon the origin of the right.

Equity affords relief in case of vendor's lien, although the lien and the vendor's right "stands independent of any such supposed argument." (Story's Eq. Jur. 1220.) And if a devise is made of real estate, charged with the payment of debts generally, it may be enforced by any one or more creditors, although there is no privity of contract between him and them. (Ib. 1244.)

These liens, as well as that of a mortgage, can be enforced only in Court of equity. (Ib. 1217.)

The citizen, as a member of the body politic, holds his property, and has *it* and his person protected, upon a trust that he will contribute his rateable proportion of the expense of such protection. He, like the vendee, owns the property—holds the fee.

At least, it is a charge upon the land, and the enforcement of it is a ground of equity jurisdiction. "A Court of equity holds pleas of all debts, incumbrances, and charges, on land, that affect it, or issue thereout." (3 Black. Com. 439.)

If this is an equity case, it can no more be dealt with by the County Court than by that of a Justice of the Peace; for by the Constitution the District Court has jurisdiction of all

cases in equity.   And if it were a proper subject, the Legislature has not conferred the jurisdiction.

The cases of *Parsons* v. *Tuolumne County Water Co.*, 5 Cal. 431, *Brock* v. *Bruice*, 5 Cal. 279, *McNeil* v. *Borland*, 23 Cal. 144, and *Van Winkle* v. *Stow*, 23 Cal. 457, establish the position that even when the Legislature have attempted to confer such jurisdiction—if there is a remedy by action—if by filing a complaint and issuing summons, the ordinary Courts, either of law or equity, can afford the relief; it is not a "special case" within the Constitution.

These actions proceed upon complaint and summons under the ordinary machinery of the District Court, and the fact that the statutes (Laws 1862, p. 520, §§ 1, 8) provides an additional summons, to issue out of the same Court, in the same case, with the ordinary one, does not tend to make it a special case.

In Iowa, Courts of equity take jurisdiction of sales of land for taxes.   (6 Clark, 179; 7 Clark, 512.)

And the same is done in Arkansas.   (21 Howard, S. C. R. · 331.)

*H. H. Hartley*, also for Respondent.

The enforcement of taxes is a proceeding in equity under our system.

It is not a common law action, because the common law Courts can only give judgment for the plaintiff or defendant in general terms.   (Story's Eq. Juris. section 25, p. 22.)

And because in equity an answer is under oath, and generally not at law.   (Id. section 31.)

Statute also requires an answer under oath in tax cases.

The most general if not precise description of a Court of equity, in the English and American sense, is, that it has jurisdiction in cases of rights recognized and protected by the municipal jurisprudence, where a plain, adequate, and complete remedy cannot be had in Courts of common law. (Story's Eq. Juris. section 33.)

In this case the Legislature has recognized the right and given the remedy to the District Court, and declared that the equity rules should apply.

The enforcement of the collection of taxes in a Court of equity is analagous to the collection of tithes, and Courts of equity in England exercise extensive jurisdiction in cases of that nature. (Story's Eq. Juris. section 219; 2 Vesey, 565; 1 Mit. Plead. 148.)

The statute gives a general lien upon property for taxes, and the suit in the District Court is only a suit *in rem.* to enforce the lien, and all liens and the enforcement thereof are implied trusts, and cognizable by Courts of equity. (Story's Jurisprudence, sections 1215, 1216, 1231, 1250.)

By the Court, SAWYER, J.

This suit was brought in the District Court for the County of Sacramento, under the Revenue Act of the State of California, to recover the sum of $62 50, taxes assessed upon the real estate described in the complaint, and made a defendant in the action.

The defendants demurred to the complaint, on the ground, among others, that the Court has no jurisdiction of the subject matter, for the reason that the amount claimed is less than $300. The demurrer was overruled; and the defendants declining to answer, judgment was entered in pursuance of the prayer of the complaint; from which judgment this appeal is prosecuted.

The statute provides that " the action may be commenced in the county where the assessment is made, before any Justice of the Peace or Court in said county having jurisdiction thereof."

Section 6, Article VI, of the Constitution, as amended since the passage of the Revenue Law of 1861, provides that "the District Court shall have original jurisdiction in all cases in

9

equity." And section 9 provides that the power of the Justices of the Peace "shall not in any case trench upon the jurisdiction of the several Courts of record."

It is insisted by the respondents that this action is a proceeding in equity, and as the District Court has jurisdiction in all cases in equity, and no jurisdiction in equity cases is expressly conferred by the Constitution upon any other Court, the jurisdiction is exclusive in the District Court, without regard to the amount in dispute, and that this action is therefore prosecuted in the proper Court.

If this action is a case in equity within the meaning of the constitutional provision under consideration, we think the conclusion of the respondents is correct. It becomes necessary, therefore, to determine the character of the action in this respect. It is not pretended that this particular action was known to Courts of equity; but it is claimed that although this is a statutory right, and that the remedy for enforcing it is prescribed by the same statute giving the right, yet that the character of the action is to be determined, not from the origin of the remedy, but from the nature of the relief sought; and if the relief sought is analagous in form to the relief granted in Courts of equity, that then it is a case in equity within the meaning of the Constitution; that under the statute the tax is a lien on the land; that the object of this proceeding is to foreclose the lien and procure a sale of the premises under a decree of the Court in the nature of a decree to foreclose a mortgage, or to enforce a vendor's lien; and the form of the decree and nature of the relief sought being such as, under the old system, could have been obtained in a Court of Chancery only, the case must be one of equitable cognizance. It was assumed in the argument of this case that this action was brought under the Act of 1861 alone. The action contemplated by the Act referred to does not, in our view, embrace any element of equity jurisdiction, either in substance or in form. The Act does not appear to us to contemplate any special decree for the

sale of the property, or any specific direction upon the sub-
ject in the judgment. The land, as well as the owner, is
regarded as owing the amount of the tax levied; and the
land, as well as the owner, is made a defendant in the action
for the purpose of enforcing the liability. Both the owner
and the land are to be served with process. The prayer of
the complaint, prescribed by the Act, is for a judgment for
so much money. If both owner and land are served with
process, judgment may be rendered against both for such
amount as they may be respectively liable to pay.  " Such
judgments, when rendered in the District Court, are to be
docketed," and when docketed, they (the judgments) " be-
come liens upon all the property against which judgment is
rendered, from the date of such assessment, and against all
other real estate of the person assessed subject to execution,
for the amount of the judgment against him from the time
of such docketing, as in other civil cases." If the judgment
is in the Justice's Court, a transcript may be filed with the
County Clerk, "who shall thereupon docket such judgments,
and they shall become liens from and after such docket entry,
in like manner as judgments rendered in the District Court,"
and the County Clerk may issue executions on such Justice's
judgment, as on judgments rendered in the District Court.
(Laws 1861, pages 432-4, sections 39, 40, 41, 44.) All this
indicates that an ordinary money judgment, which is to be
enforced by execution in the usual way, is all that is contem-
plated. The judgment may be against the land, if the land
is made defendant and served with process, but it is only a
money judgment for the amount of the tax due—the same
kind of a judgment that is rendered against the owner. The
judgment becomes a lien like all other money judgments;
but the lien, by relation, dates back to the time when the lien
for taxes attached, and continues "against the property owing
the taxes" until the delinquent taxes are paid thereon. If
the land is not served with process, probably the judgment
would only bind the interest of the person served, and con-

The People *v.* F. Mier *et als.*

stitute such a lien only as the judgment would create upon the other real estate of the party served; but if the land is served, the judgment against the land would be a lien upon it as against all claimants, whether known or unknown, and it is to secure this result that the land is authorized to be made a defendant. There would seem to be no good reason why any special order or direction for a sale of the premises made defendant in the action should be inserted in the judgment, any more than in a case where an attachment has been levied before judgment, and a specific lien on the property attached acquired for the security of the judgment when obtained; and none seems to be required or contemplated by the provisions of this Act.

The lien for taxes thus fixed and rendered certain by a judgment takes precedence of all other claims of every kind whatsoever. There are no conflicting claims to be determined or equities to be adjusted between the parties. No more land is to be sold on the execution than is sufficient to pay the judgment and costs, and there are no surplus proceeds to be distributed. The issues formed by the pleadings prescribed by the statutes are few and simple. There is nothing to be done in the proceedings except to try the few issues raised by the pleadings, and render a money judgment for the amount found due, either against the owner or the land, or both, as the exigencies of the case may require; and the judgment is to be enforced by execution, as in ordinary civil cases. If, then, the action depends upon the Act of 1861, without reference to any other, it is not a case in equity, and the amount claimed, being less than $300, the District Court would have no jurisdiction of the case. But it will be necessary to consider a subsequent Act.

In 1862 a second Act was passed relating to this subject. It does not purport to be an amendment to the Act of 1861, yet from its terms it evidently had some relation to that Act, and was doubtless intended to be supplementary to it. It makes some further and different provisions in relation to

parties, and provides for a different mode of service of summons. The District Attorney is at liberty to pursue in these respects the Act of 1861 or 1862, at his option; for section 9 provides that "the remedies authorized by this Act are cumulative, and shall not be construed as prohibiting any remedy, process, or proceeding heretofore authorized."

The Act of 1862 prescribes no form for a complaint, but recognizes the various actions and proceedings already authorized by law, and doubtless contemplates that the pleadings provided for in other Acts may be used in connection with such modifications as to the parties and service of process as are made by this Act, at the option of the District Attorney. Section 8 of the Act of 1862 also provides that "in hearing and determining an action for *enforcement of a lien* for taxes, the Court in which it is pending shall have and exercise all the powers that pertain to Courts of equity in foreclosure of mortgages and liens; but when the decree of the Court contains no special directions as to the mode of selling, no more of the property shall be sold than is necessary to pay the judgment and costs, nor shall the property be sold for less than the amount of the judgment and costs." (Laws 1862, p. 523.) This section seems to contemplate that under the several Acts in force either a decree foreclosing the lien for taxes already existing, with specific directions for selling the land, and prescribing the mode of sale, or that a money judgment, without an order of sale or special directions, may be had at the option of the District Attorney.

It seems also to contemplate that, in some cases where specific directions for a sale are given in the decree, more property may be sold than sufficient to pay the taxes, and that there may be a surplus to be distributed. It was the peculiar province of Courts of equity to take cognizance of liens upon real estate. The forms of proceedings in those Courts were adapted to this purpose, and to adjusting the conflicting claims and cross equities of the different parties. In decrees in equity provision was made foreclosing and enforcing the

lien already existing, with specific directions for a sale of the land, and the application of the proceeds in satisfaction of the lien, according to the exigencies of the case. But at law, only a money judgment could be entered. The judgment, when entered, might become a lien upon real estate in modes prescribed by law, to be enforced by execution. The different jurisdictions proceeded upon different theories. In equity cases, there was a specific lien already existing, which was to be perfected and enforced by a decree peculiar to that Court, containing special directions for a sale of the property. At law, there was only a general money demand, which was to be ascertained by the judgment; and when so ascertained, the judgment itself might become a lien upon land, to be enforced by execution. In one of the cases contemplated by the several Acts under consideration, the proceeding goes upon the former theory, and the Court, in rendering its decree, is to "have and exercise all the powers that pertain to Courts of equity in the foreclosure of mortgages and liens;" and the proceeding is essentially, in substance and form, a " case in equity." In the other case, the proceeding is upon the latter theory, and is in substance and form a case at law. At this day, under our system of practice, these distinctions may seem of little moment, and they doubtless were so at the time these several Acts were passed. So far as the recovery of the taxes is concerned, the same result is sought in either mode, and probably the judgment in either form of the proceeding would be equally efficacious in attaining that result. It would seem to be a matter of little practical consequence whether a lien already existing is foreclosed and enforced as such, or whether a money judgment becomes an original lien taking effect by relation from the time of the assessment, or even at what period of time the lien commences to operate, since from the moment the lien for taxes attaches, whether by judgment or otherwise, it takes precedence of all other liens or claims upon the land, and can only be discharged by payment.

But in adopting the amendments to the Constitution, the

people have seen fit to retain the terms *law* and *equity* in that instrument, and to make the principles upon which these different Courts proceed, the test of jurisdiction. In this view, therefore, the distinction becomes important. The result under the Constitution and the several statutes as they now stand, is, that the District and Justices' Courts, in tax cases, where the amount claimed is less than $300, have or have not jurisdiction, depending upon the nature of the judgment sought by the District Attorney in his complaint. Only one form of complaint is prescribed by the statute, and the facts required to be alleged in that form are all that are necessary to authorize either a judgment foreclosing the lien for taxes already existing, with an order of sale and special directions, as authorized by the Act of 1862, or a money judgment merely, as contemplated by the Act of 1861. The character of the case, therefore, must be determined by the prayer of the complaint.

In the present case, the prayer of the complaint is for a decree foreclosing the lien, and for a sale of the premises. The judgment also follows the prayer of the complaint.

If we are correct in the view we have taken of the several Acts and the provisions of the Constitution under consideration, this is an equity case, and the District Court has jurisdiction.

Although the question is not presented by this record, it may be well before leaving this branch of the case to advert to one other provision of the Constitution, which, under some circumstances, may also determine the jurisdiction in suits for the collection of taxes under the revenue laws of this State.

Section 6, Article VI, also provides that "the District Courts shall have original jurisdiction * * * in all cases at law which involve * * * the legality of any tax, impost, assessment, toll, or municipal fine," etc.

The Revenue Act of 1861 provides that in the answer to the complaint in a suit for taxes, only certain matters speci-

The People *v.* F. Mier *et als.*

fied in the Act shall be set up as a defence to the action. Among the defences are the following: " That such property (the property taxed) is exempt from section 4 of this Act," and "Fraud in the assessment or fraud in failing or neglecting to comply with the provisions of this Act, by which the party or property assessed has suffered injury." (Laws 1861, p. 433, § 41, subdiv. 2d and 4th.)

In cases where these defences are set up in the answer, perhaps the legality of the tax would be involved, within the meaning of this provision of the Constitution. If so, the jurisdiction of the Justice would be ousted on the filing of the answer, and unless provision is made by law for the transfer of cases under such circumstances to the District Court, in some mode analagous to transfers now made in cases where it appears by the answer that the title to real estate is brought in question in suits instituted in a Justice's Court, some embarrassment may arise in pursuing, in these Courts, the remedies provided by the Revenue Act of 1861.

Several other points are presented by the demurrer, but they were not relied on in the argument, and in the opinion of the Court they are not well taken.

A motion was made in the District Court to strike out certain portions of the complaint on the ground of immateriality and irrelevancy. The motion was denied and exception taken. This ruling is assigned as error.

The matter objected to is clearly immaterial, and ought to have been stricken out. But we cannot see that the allegations were liable to work any serious injury to the defendants. We think the error is not of sufficient importance to justify a reversal of the judgment.

The judgment is affirmed.

RHODES, J., expressed no opinion.