## In re Isadore DONNER.

### BAP No. CC–81–1388 HKV.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 15, 1982.

Decided March 4, 1983.

Joel M. Simon, Gillin, Scott, Alperstein & Glantz, Sherman Oaks, Cal., for appellant.

Victor A. Sahn, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for appellee.

Before HUGHES, KATZ and VOLINN, Bankruptcy Judges.

### OPINION

VOLINN, Bankruptcy Judge.

This is an appeal from an order allowing a claim of exemption. The trial court held that the debtor-appellee had effectively abandoned a prior homestead and was therefore free to acquire a new homestead which he was entitled to claim exempt in his bankruptcy proceeding. We affirm.

### I.

The debtor and his wife separated in November, 1976 and filed a petition for dissolution of their marriage January 6, 1977. On March 11, 1977, the debtor's spouse filed a declaration of homestead for a head of household pursuant to California Civil Code § 1260, for the benefit of herself and the debtor on their home in La Canada. The dissolution hearing was held and the debtor, pursuant to a property settlement agreement, executed a quit claim deed for the La

Canada house to his spouse on August 10, 1977. The deed was recorded the following day. A final decree dissolving the marriage and approving the property settlement agreement was entered on April 19, 1978.

The debtor thereafter purchased a home in Tustin, on which he declared a homestead in March, 1981. The following month the appellant, Western Craft Paper Group, obtained a judgment against him.

Debtor and his former spouse remarried on July 3, 1981. The debtor filed an individual petition in bankruptcy on September 16, 1981. He claimed a homestead exemption on the Tustin property in the bankruptcy case.

Appellant objected, contending debtor's homestead in the Tustin property was invalid because he continued to have a homestead in the La Canada property. The trial court overruled the objection, holding that after delivery of the deed and entry of the divorce decree, the husband had no homestead in La Canada. The basic issue presented by appellant to the court below was that "The quitclaim deed ... did not extinguish or cause an abandonment of debtor's homestead rights in said La Canada residence" under California Civil Code § 1243(3) enacted in 1979, which provides that

"a homestead can be abandoned only by:
. . .
A declaration of abandonment or a conveyance by which one spouse conveys the homestead to the other spouse without expressly reserving his or her homestead rights."

Appellant contends that the debtor, not having properly abandoned the La Canada homestead, is debarred from claiming another homestead by virtue of C.C.P. 690.-31(b)(1) which, in effect, precludes claims to a second homestead where one already exists.

## II.

This appeal raises the question of whether a married person may abandon or otherwise terminate a homestead by conveying his or her entire interest in the property to the other spouse during a marriage that is subsequently dissolved.

At the outset, we note that the remarriage does not affect the problem. The trial court concluded that an issue involving the remarriage was not presented and made no ruling with respect thereto. In any event, the debtor has filed bankruptcy in his separate capacity. His claim to the Tustin homestead was the only one before the court. It is this claim which was contested by the creditor. The debtor has not claimed a homestead in the La Canada property. The spouse's claim thereto, whether as a present or former wife, was not before the court.

## III.

The principles set forth in the case of *In re Teel's Estate*, 34 Cal.2d 349, 210 P.2d 1 (1949) are applicable to the issue before us. *In re Teel* involved the claim of a husband, who had been divorced shortly before the death of his former wife, to a homestead in the former home despite his having signed a property settlement agreement wherein he quit claimed his interest in the home to her. He expressly abandoned any claim for family allowance or homestead therein. (She filed a homestead declaration unbeknownst to him.) The interlocutory decree approved the agreement. The husband prayed for vacation of the interlocutory decree alleging a reconciliation and an oral agreement to cancel the deed. The court, denying the husband's application, held that while the deed was not the equivalent of a declaration of abandonment, it was a transfer of all the husband's interest in the property including any interest by way of homestead.

Such is the case here. As stated by the court below:

"Certainly the combination of the deed to the former spouse plus the interlocutory and final decree of divorce operated to convey to the former spouse all interest of the husband in the subject property and also operated to terminate whatever homestead interest the former husband

may have had in what then became the separate property of the former wife."[1]

The foregoing language is consistent with *In re Winslow,* 121 Cal. 92, 53 P. 362 (1898), which holds that given sufficient evidence of intent, a homestead can be abandoned by deed pursuant to a dissolution.

## IV.

Appellant's position, if accepted, would mean § 1243 prescribes that abandonment must be accomplished by the grantee spouse. Such a result would create a paradox whereby the transferor, having been divested of any interest in the property homesteaded during the former marriage, is nevertheless precluded from claiming a homestead to which he would be otherwise entitled, so long as the former spouse chooses not to terminate a homestead right in property which is exclusively hers. This interpretation disregards case law and statutes based in the realities of divorce and attendant distribution of property of the parties.

There is little functional difference between total divestiture of an interest in property by virtue of a court decree and a deed given pursuant thereto, and abandonment of all interest in the same property. Cases such as *California Bank v. Schlesinger,* 159 Cal.App.2d Supp. 854, 324 P.2d 119, 122 (1958), and *Bonner v. Superior Court,* 63 Cal.App.3d 156, 133 Cal.Rptr. 592 (1976), are consistent with this perspective.

In *Schlesinger, supra,* the wife, in a divorce proceeding, was awarded the family home, on which a homestead was declared during the marriage. The husband, pursuant to the decree, quit-claimed the property to her. Subsequently, certain judgment creditors levied on proceeds of a foreclosure sale. The wife contended that her homestead attached to the proceeds. The judgment creditors contended that the divorce,

*ipso facto,* terminated the homestead exemption. The court stated:

"(p. 122) In a case, such as this, the homestead of the ex-wife continued after the divorce *and after the ex-husband's relinquishment of his property interest to her...*"

"(p. 128) We are satisfied that Civil Code §§ 146 and 1265 continued the homestead protection to defendant ... *and in her alone* after quitclaim from her husband..." Emphasis Added.

In *Bonner, supra* the wife, similarly was awarded the homesteaded property. The husband was to receive approximately one-half the equity in the home or $5,000 payable over three years. Not having been paid, he levied on the homestead contending that the divorce decree awarding her the property made no provision for a homestead.

The court, citing *Schlesinger,* upheld the validity of a wife's homestead rights in joint tenancy property which had been quitclaimed by a husband after a divorce in which no disposition was made of the property. It also stated that the portions of the Civil Code dealing with distribution of property in divorce proceedings (e.g., relinquishment of interests in property) "to the extent there is an apparent conflict" must control over general provisions of the Civil Code relating to force sale of property (e.g., requirements as to abandonment). The reasoning was stated at 133 Cal.Rptr. p. 598:

"It is apparent, however, that Civil Code section 4800 is more specific than Civil Code section 1240, because the former deals expressly with homesteads in the context of dissolution proceedings, whereas the latter deals with homesteads in relation to judgments in general."

---

1. The court further cited the following:

"I find no California case precisely upon the point, but in 37 Cal.Jur.3d 454 the statement is made:

'Accordingly, in the absence of such an express reservation of rights, the homestead would appear to terminate as to the spouse conveying, and to vest in the other spouse as though he were the survivor, being freely alienable in his hands and retaining as a homestead characteristic only the exemption from forced sale.'"

## CONCLUSION

While the language of California Civil Code § 1243(3) is somewhat ambiguous, it may be read consistently with the purpose of the exemption statutes and its relationship to inter-spousal transfers; that where there is a conveyance from one spouse to another "without expressly reserving his or her homestead rights" the transferee spouse becomes the sole beneficiary of the homestead interest. The transferring spouse, having relinquished all interest in the property, has nothing to abandon and is therefore not precluded, by virtue of the prior homestead, from selecting another.

AFFIRMED.

HUGHES, Bankruptcy Judge, dissenting:

I respectfully dissent.

### I

The question presented by this appeal is whether, under California law, a valid homestead may be declared by one who has relinquished all interest in a prior, unabandoned homestead.

The validity of the Tustin homestead declared by Mr. Donner is before us because of the principle enunciated in *Waggle v. Worthy,* 74 Cal. 266, 268, 15 P. 831 (1887):

> A party cannot have two homesteads; and if he attempts to acquire a second while the first is in force, the second is void.

That principle was reiterated in *Towers v. Curry,* 247 F.2d 738, 739–740 (9th Cir.1957):

> There can be no more than one valid declaration of homestead by a claimant.

It is related to the principle that a husband and wife cannot have two homesteads. *Gambette v. Brock,* 41 Cal. 78, 84 (1871); *Strangman v. Duke,* 140 Cal.App.2d 185, 295 P.2d 12 (1956).

The problem does not solve itself because "[t]he filing of a second homestead does not effectuate an abandonment of the first homestead." *Towers v. Curry,* supra, at 739. Calif.Civil Code § 1261.1.

Thus, we need to determine whether, in the words of the California Supreme Court, Mr. Donner attempted "to acquire a second [homestead] while the first [was] in force," i.e., whether he still had a homestead in La Canada when he declared the Tustin homestead.

The conventional inquiry, followed in the cases cited, is whether the first homestead had been abandoned. Under this analysis, a homestead is either in force or it is not.

The inquiry followed by the trial court was different; it decided that Mr. Donner retained no interest in the first homestead after he deeded the property to Mrs. Donner and their marriage terminated.

I conclude that, given the evidence before the trial court, the prior homestead had not been abandoned and that, notwithstanding relinquishment of all interest in the first home, Mr. Donner had an existing home-stead as the term was used in *Waggle v. Worthy,* supra, when the Tustin declaration was filed.

### II

The joint homestead in La Canada was not abandoned, on the evidence.

### A

The statutory methods of abandoning a homestead are found in Calif.Civ.Code § 1243 and are by the express terms of the statute exclusive. They all require either a declaration of abandonment or a conveyance. An abandonment must be executed and acknowledged because it is effective only when "recorded in the office in which the homestead was recorded." Calif.Civ. Code § 1244.

If the original claimant is married, the husband and wife must execute and acknowledge the abandonment (§ 1243(1)) or conveyance (§ 1243(4)) except in the case of a married person's separate homestead (§ 1243(5)). However, an alternative method is provided by section 1243(3):

> 3. A declaration of abandonment or a conveyance by the grantee named in a conveyance by which one spouse conveys the homestead to the other spouse with-

out expressly reserving his or her homestead rights.

Subsection 3 thus contemplates interspousal deeds that reserve homestead rights to the grantor and those that do not. As to the former, abandonment depends on compliance with other provisions. As to the latter, abandonment is accomplished only by the grantee's abandonment or conveyance.

Applying the facts of this case to the statute, it is clear that the homestead was not abandoned because Mr. Donner did not join Mrs. Donner in a declaration of abandonment (§ 1243(1)) or a conveyance (§ 1243(4)) and there is no evidence that Mrs. Donner (as grantee) recorded a conveyance or a declaration of abandonment (§ 1243(3)).

### B

I have found no modern cases holding that a California homestead can be abandoned except through strict compliance with those statutory procedures. None of the cases cited in the majority opinion are to the contrary.

*Estate of Teel,* 34 Cal.2d 349, 210 P.2d 1 (1949) expressly held that the homestead was not abandoned. It so held because the marital settlement agreement was not acknowledged or recorded as required by statute. Calif.Civ.Code § 1244.

On the other hand, the court found a statutory abandonment in *Estate of Winslow,* 121 Cal. 92, 53 P. 362 (1898) on similar facts because the parties' separation agreement—construed as a declaration of abandonment—had been duly acknowledged and recorded.

The other two cases—*Bonner v. Superior Ct. for Cty. of L.A.,* 63 Cal.App.3d 156, 133 Cal.Rptr. 592 (1976); *California Bank v. Schlesinger,* 159 Cal.App.2d Supp. 854, 324 P.2d 119 (1958)—hold that termination of the marriage does not terminate the homestead, even when coupled with an interspousal deed or a court award of the property to one spouse.

### C

There was no evidence before the trial court that the Donner's marital settlement agreement (if it could be read as a declaration of abandonment) was acknowledged by the parties and recorded. Accordingly, on this issue, *Estate of Teel* rather than *Estate of Winslow* controls.

Further, neither the divorce nor the conveyance to Mrs. Donner, or the combination, caused an abandonment of the existing homestead, this on the authority of *Bonner* and *Schlesinger.*

I conclude that the Donners' joint homestead in La Canada was not abandoned.

### III

The question remains: did Mr. Donner continue to have a homestead in La Canada notwithstanding his relinquishment of all interest in the property and his failure to "reserve his . . . homestead rights"? Calif. Civ.Code § 1243(3). The quest for an answer is aided by a review of the California homestead in general and the La Canada homestead in particular.

### A

A California homestead has until recently had several characteristics. Primarily, it serves to exempt property to which it attaches (the homestead; Calif.Civ.Code § 1269) from execution by creditors. Calif. Civ.Code § 1240. An altogether different characteristic was the right of survivorship it confered on married persons' property until January 1, 1981. Calif.Civ.Code § 1265 (1873–4) *amended by* Calif.Civ.Code § 1265 (1980). It continues to restrict third-party conveyances by a married person. Calif.Civ.Code § 1242.

An understanding of the reported cases (all of which predate the 1980 amendment to Calif.Civ.Code § 1265) follows an understanding of these different characteristics. Thus, it was noted that in a particular decision "the term 'homestead' is used in the sense of a property right imposed by the homestead upon the legal title, rather than as the homestead exemption from

claims of creditors." *California Bank v. Schlesinger,* supra, at 864, 324 P.2d 119.

Recognition of the different characteristics also helps define what occurs when, as in this case, an interspousal conveyance that does not reserve homestead rights is executed: the grantor relinquishes his power to restrict third-party conveyances by the grantee and, prior to 1981, relinquished survivorship rights in the homesteaded property. This is precisely what happened in *Estate of Teel,* supra, where the Supreme Court denied the husband the right of survivorship after expressly holding that the homestead had not been abandoned.

From this I conclude that such a conveyance strips the homestead of all characteristics save one: exemption from creditor claims. This, of course, is the only characteristic we are concerned with because Mr. Donner is not asserting any interest in the La Canada home by way of survivorship or otherwise.

### B

The homestead declaration recorded by Mrs. Donner on March 11, 1977 states that she was married to Isadore Donner and that

(4) . . . I make this declaration for the joint benefit of myself and my husband.

This is the so-called married-persons or head-of-family homestead. Calif.Civ.Code § 1262. In legal effect, it is the act of the husband as well as the wife. See, *Johnson v. Brauner,* 131 Cal.App.2d 713, 281 P.2d 50 (1955). The amount of this exemption is $45,000, over and above all liens and encumbrances. Calif.Civ.Code § 1260(a)1.

This homestead has not been abandoned (on the authority of Calif.Civ.Code § 1243 and *Teel,* supra) and continues in existence as an exemption from creditor claims (*Bonner,* supra; *Schlesinger,* supra). It remains a homestead for the joint benefit of both Mr. and Mrs. Donner, although it protects only property in which Mrs. Donner has an interest.

### C

Given the California homestead law as a whole and the alternatives available to the Donners, I think it reasonable to conclude that the California courts would hold that Mr. Donner had a homestead in La Canada within the meaning of *Waggle v. Worthy* that was in force when he declared the Tustin homestead.

First, it is understandable that California law permits Mr. Donner to assign his homestead to Mrs. Donner because the same body of law permits Mr. Donner's creditors to levy upon and sell community property transferred to her. *Bank of America v. Mantz,* 4 Cal.2d 322, 49 P.2d 279 (1935); *Harley v. Whitmore,* 242 Cal.App.2d 461; 51 Cal.Rptr. 468 (1966). Indeed, one of the purposes of the probate homestead is to protect the widow "against the creditors of her deceased husband . . ." *Walton v. Walton,* 59 Cal.App.2d 26, 32, 138 P.2d 54 (1943).

Unless the grantee is permitted to preserve the married persons homestead exemption of $45,000, she would be limited to an exemption of $30,000. Calif.Civ.Code § 1260(a)3.

Furthermore, preservation of the existing joint homestead may be necessary if a judgment against the grantor spouse has been recorded. A judgment lien does not attach to an existing homestead, *Engleman v. Gordon,* 82 Cal.App.3d 174, 146 Cal.Rptr. 835 (1979), but would attach if the grantee spouse substitutes a new homestead following the divorce.

Second, the California legislature has evidenced a policy that strictly limits homesteads of individuals to $30,000 and of married persons/heads of family to $45,000. This is illustrated by provisions of the Civil Code governing homesteads acquired in the period between the interlocutory and final judgment dissolving a marriage. Calif.Civ. Code §§ 1300 et seq.

Although either spouse may claim a "married person's separate homestead," the amount of the homestead is that of either a single person or head of family (e.g., one who has custody of minor children). Civ. Code § 1302. Any married person declaring such a homestead "who is not head of a family" is limited to the single person's

exemption. Civ.Code § 1302. Should the parties reconcile after each party had selected such a homestead, one of the homesteads must be abandoned or the exemption under each is reduced by one-half. Civ. Code § 1304.

Failure to recognize that Mr. Donner continued to have a homestead (although benefitting Mrs. Donner) and to apply the principle of *Waggle v. Worthy* gives Mr. and Mrs. Donner greater combined homestead rights than are afforded by Civ.Code § 1300 et seq. merely because the declaration was recorded prior to, rather than after, the interlocutory judgment. I perceive no reason why the California courts or legislature would countenance this.

### D

It is pointed out in the majority opinion, however, that this result creates a paradox whereby Mr. Donner is "precluded from claiming a homestead ... so long as the former spouse chooses not to terminate a homestead right in property which is exclusively hers". The point is well taken, but in the end it is unpersuasive.

Mr. Donner was not without options under Calif.Civ.Code § 1243 when he negotiated the marital settlement agreement with Mrs. Donner. He chose to perpetuate the joint homestead for Mrs. Donner's benefit rather than bargain for its joint abandonment prior to conveying the property to Mrs. Donner. As noted above, there are reasons for this option.

I therefore conclude that Mr. Donner was precluded from declaring a valid homestead on the Tustin property notwithstanding his relinquishment of interest in the property in La Canada.

I would reverse the judgment appealed.